# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE AVILA,<br>      *Plaintiff*,<br><br>      v.<br><br>NANCY A. BERRYHILL,<br>*Acting Commissioner, Social Security*<br>*Administration*,<br>      *Defendant*. | No. 3:18-cv-581 (VAB) |

## RULING AND ORDER ON MOTION TO REVERSE THE DECISION OF THE COMMISSIONER AND MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER

Jose Avila ("Plaintiff") filed this administrative appeal under 42 U.S.C. § 405(g) against Nancy A. Berryhill, Acting Social Security Commissioner ("Defendant" or "Acting Commissioner"), seeking review of the Social Security Administration's ("SSA") denial of his claim for Social Security Disability ("SSDI") and Supplemental Security Income Benefits ("SSI"). Complaint ("Compl."), ECF No. 1; *see also* Mem. of Law in Supp. of Mot. to Reverse the Decision of the Comm'r ("Pl. Mem."), ECF No. 19-2.

Mr. Avila moves to reverse the decision of the Acting Commissioner. Mot. to Reverse the Decision of the Comm'r ("Pl. Mot. to Reverse"), ECF No. 19. The Acting Commissioner[1] moves the Court to affirm her decision. Def. Mot for Order Affirming Decision of the Comm'r

---

[1] *See* Commissioner Bio, accessed Jul. 9, 2019, https://www.ssa.gov/agency/commissioner.html; Press Release, Social Security Administration, Social Security Welcomes its New Commissioner (Jun. 17, 2019), https://blog.ssa.gov/social-security-welcomes-its-new-commissioner/. Under Rule 25(d) of the Federal Rules of Civil Procedure, when a party in an official capacity resigns or otherwise ceases to hold office while the action is pending, the officer's successor is automatically substituted as a party, regardless of the party's failure to so move or to amend the case caption. FED. R. CIV. P. 25(d). The Court also may order the substitution of a party at any time. *See Williams v. Annucci*, 895 F.3d 180, 187 (2d Cir. 2018); *Tanvir v. Tanzin*, 894 F.3d 449, 459 n.7 (2d Cir. 2018). Accordingly, the Court directs the Clerk of the Court to amend the docket and case caption to reflect that Andrew M. Saul, Commissioner of the Social Security Administration, is now the named Defendant in this action.

("Def. Mot. to Affirm"), ECF No. 20.

For the following reasons, the Court **DENIES** Mr. Avila's motion to reverse the decision of the Commissioner, Pl. Mot. to Reverse; and **GRANTS** the Acting Commissioner's motion to affirm, Def. Mot. to Affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Born in 1966, Jose Avila worked as a hospital housekeeper in 1990, a school bus driver from 1999 to 2001, and a groundskeeper at a golf course from 2001 to 2014. Transcript of the Administrative Record ("Tr."), ECF No. 16, at 202, 207; *see also* Transcript of Oral Hearing ("Hearing Transcript"'"), Tr. 41. In the summer of 2015, Mr. Avila filed his initial SSDI and SSI application, claiming an onset of disability in December 2014. Statement of Material Facts, ECF No. 19-1, at 1; Disability Determination Explanation, Tr. 91.

Mr. Avila suffers from asthma that flares in response to temperature fluctuations and allergens. Yale New Haven, Prob. List (July 15, 2015), Tr. 284; Jose Luis Gomez Villalobos, M.D., Progress Notes (Oct. 25, 2016), Tr. 732–33; Tr. 284; Florence Hsu, M.D., Progress Note (Aug. 5, 2014), Tr. 347 ("Asthma is acting up again. Finished prednisone taper the day before yesterday. Has not started Spiriva yet. Did not go to work today due to asthma, did 4 albuterol neb treatments."); Junjie Liu, M.D., Progress Note (July 7, 2015), Tr. 286; Statement of Material Facts at 4. In the fall of 2016, Mr. Avila was using albuterol approximately four times per day and still experiencing symptoms. Jose Luis Gomez Villalobos, M.D., Progress Notes (Oct. 25, 2016), Tr. 732–33.

Mr. Avila also suffers from shoulder injuries. *Id.* In July 2015, Mr. Avila's treating physician, Dr. Liu, noted that the shoulder pain had developed over a year, lasted for hours, and

was not relieved by non-prescription medication. Junjie Liu, M.D., Progress Note (July 7, 2015). In December 2015, Dr. Liu noted that lidocaine patches were providing some relief for Mr. Avila's shoulder problems, but that he had completed one month of physical therapy without relief. Junjie Liu, M.D., Progress Note (Dec. 18, 2015), Tr. 554.

A January 2016 MRI of Mr. Avila's left shoulder revealed "full-thickness tear of the supraspinatus tendon" and "partial tear involving the intra-articular portion" of the "long head of biceps tendinosis." Jose Restrepo, M.D., Exam: MR Shoulder without Contrast Left (Jan. 11, 2016), Tr. 737–38. In a follow-up visit, Dr. David Kovacevic, M.D. characterized the MRI as "demonstrat[ing a] small full-thickness SSp tear with no retraction and preserved muscle quality." David Kovacevic, M.D., Chief Complaint Follow-up (Nov. 22, 2016), Tr. 735–36. Dr. Liu, however, characterized the rotator cuff tendon tears as "severe." Junjie Liu, M.D., Adult Clinic Visit Note (Nov. 28, 2016), Tr. 729 ("Lifting normal load of ~10 lb worsens symptoms.").

Mr. Avila is morbidly obese, suffers from gastrointestinal issues, spinal stenosis, Type II diabetes, and a host of chronic physical conditions. Junjie Liu, M.D., Progress Note (June 22, 2015), Tr. 290; Jose Luis Gomez Villalobos, M.D., Progress Note (Sept. 29, 2015), Tr. 489.[2] Junjie Liu, M.D., Progress Note, Tr. 290. Dr. Liu and other doctors recommended bariatric surgery to alleviate some of these issues. Id.; Jose Luis Gomez Villalobos, M.D., Progress Note, Tr. 489. Mr. Avila was scheduled for bariatric surgery in November 2015, id., but cancelled the procedure due to its potential complications. Junjie Liu, M.D., Progress Note (Feb. 11, 2016), Tr. 573; Statement of Material Facts at 11, 14.

On November 28, 2016, Dr. Liu described Mr. Avila's ability to work as "severely

---

[2] A 2015 MRI showed "very mild degenerat[ion]" of Mr. Avila's spine. Neil Tishkoff, M.D., Exam: MR Cervical Spine without Contrast (June 29, 2015), Tr. 476–77.

limited." Junjie Liu, M.D., Residual Functional Capacity: Medical Source Opinion of Treating Physician (Nov. 28, 2016), Tr. 723–24.

In addition to these physical ailments, Mr. Avila also suffers from depression and likely has a learning disorder. Liese Franklin-Zitzkat, Psy.D., Disability Evaluation (Sept. 3, 2015), Tr. 426 ("DSM-5 Diagnostic Impressions: 296.22 Major Depressive Disorder, single episode, moderate R/O Specific Learning Disorder, with impairment in reading.").

Following a consultative evaluation, Dr. Liese Franklin-Zitzkat found that Mr. Avila "would likely need extra time with written instructions" and that he self-reported "moderate or even marked difficulty sustaining concentration," but exhibited only mild difficulty on a brief mental status examination task intended to screen for concentration problems. *Id*. at 427. Dr. Franklin-Zitzkat determined that Mr. Avila's depression "could interfere with his ability to maintain attendance" but that since "the depression is related to his alleged physical problems/inability to work . . . if he could physically work and maintain employment, the depression would remit and he would be able to withstand the stresses and pressures of a routine work day and maintain attendance." *Id*.

On October 30, 2015, the SSA denied Mr. Avila's initial disability application. Supp. Security Income Notice, Tr. 130–32; Disability Determination documents, Tr. 91–110. Mr. Avila requested reconsideration. Request for Reconsider. Summary, Tr. 134–35. On January 15, 2016, the SSA again denied Mr. Avila's application. Supp. Security Income Notice of Reconsider, Tr. 137–39; Disability Determination documents, Tr. 111–128.

On March 8, 2016, Mr. Avila requested a hearing before an administrative law judge ("ALJ"). Request for Hr'g by Admin. Law Judge, Tr. 140–41.

On November 28, 2016, an ALJ heard Mr. Avila's Social Security case. Hearing

Transcript, Tr. 16. At that hearing, Mr. Avila testified about his spinal stenosis, diabetic neuropathy, blood sugar control, asthma, bilateral shoulder injuries, depression, sleep apnea, and prior carpal tunnel problems. Hearing Transcript,  Tr. 25–32. He explained that he quit his golf course job when the pain from his spinal stenosis worsened. Hearing Transcript, Tr. 42. He described his current height and weight as "5'2", 230." *Id*., Tr. 35. Mr. Avila testified that when he sits for "a little bit" his legs go numb, but when he stands his "bottom goes numb," his legs tingle, and he feels pain. Hearing Transcript, Tr. 34, 44, 47.

Mr. Avila testified that he dropped out of school in the ninth grade and did not subsequently complete his GED or vocational coursework. Hearing Transcript, Tr. 36–37. He reported limited reading and writing ability. *Id*.

The ALJ also heard from a vocational expert in rehabilitation counseling. Hearing Transcript, Tr. 57. She testified that Mr. Avila's prior work as a groundskeeper was medium exertional and skilled, while his work as a bus driver was medium exertional and semiskilled. Hearing Transcript, Tr. 59. She testified that the skills from those jobs were largely trade specific and non-transferable. Hearing Transcript, Tr. 60.

The ALJ asked the vocational expert to consider a hypothetical person of Mr. Avila's age, education level, and past relevant work, who could lift twenty-five pounds frequently and fifty pounds occasionally, but not reach bilaterally frequently and who would need to avoid exposure to extreme wetness, humidity, fumes, odors, dust, gases, poorly ventilated areas, dangerous fixed machinery, and assembly-line work (i.e., paced work). Hearing Transcript, Tr. 60–61. The vocational expert testified that that person could perform a variety of medium exertional jobs including: driving a school bus, hand packing, or working as a dietary aide or laundry employee. Hearing Transcript, Tr. 61–62. She testified that there were significant

numbers of such positions in the national economy. *Id.*

The ALJ asked the vocational expert to consider only light jobs for such a person. Hearing Transcript, Tr. 62. The ALJ added that the person would need to alternate between sitting and standing every 45 minutes, but could frequently reach overhead with his right arm and occasionally with his left arm. Hearing Transcript, Tr. 62–63.

The vocational expert testified that that person could not do Mr. Avila's past work because the person would not be free to change positions at regular intervals. Hearing Transcript, Tr. 64. The hypothetical person, however, could work light exertional jobs including parking lot attendant, ticket seller, or cashier. Hearing Transcript, Tr. 64–65. The vocational expert later testified that the person could work sedentary exertional jobs, such as telephone order clerk or hand packer. Hearing Transcript, Tr. 69. She testified that there were significant numbers of such positions in the national economy. *Id.*

The ALJ then asked the vocational expert if there would still be jobs for such a person if he needed to take two unscheduled breaks of 20 minutes each during an eight-hour work day, Hearing Transcript, Tr. 66; the vocational expert estimated that no such jobs exist, *id.*

On January 11, 2017, the ALJ determined that Mr. Avila was not disabled from December 1, 2014 through January 11, 2017. Notice of Decision – Unfavorable ("ALJ Decision"), Tr. at 82–90.[3]

The ALJ determined that Mr. Avila's last insured date was December 31, 2019. ALJ Decision, Tr. 84.

At Step One, the ALJ determined that Mr. Avila had not engaged in substantial gainful

---

[3] The ALJ's decision date is listed as January 11, 2016. ALJ Decision, Tr. 90. But, that date precedes Mr. Garcia's hearing before the ALJ by ten months. The header to the ALJ's decision lists what appears to be a facsimile date of "Jan-11-2017."

activity since December 1, 2014. *Id.*

At Step Two, the ALJ determined that Mr. Avila had seventeen medically determinable impairments: "cervical degenerative disc disease, lumbar spinal stenosis, bilateral shoulder tendon tears, obesity, headache, asthma, diabetes mellitus, gastroesophageal reflux disease, hernia, obstructive sleep apnea, allergic rhinitis/sinusitis, allergies, shingles, hypertension, hyperlipidemia, depression and learning disorder (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*)." ALJ Decision, Tr. 85.

Despite the number of impairments, the ALJ found that Mr. Avila "does not have an impairment or combination of impairments that has significantly limited (or is expected to significantly limit the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant does not have a severe impairment or combination of impairments (20 CFR 404.1521 *et seq.* and 416.921 *et seq.*)." *Id.*

With the exception of significant bilateral shoulder tendon tears, the ALJ found that Mr. Avila's symptoms were largely episodic and that his medical records revealed "largely 'negative' unremarkable physical/neurological examinations . . . 'well controlled' diabetes mellitus . . . hypertension, hyperlipidemia, shingles and depression." ALJ Decision, Tr. 87. The ALJ noted that most of Mr. Avila's conditions had been "treated conservatively with medications and physical therapy during this period." *Id.* (E.g., "During the entire alleged period of disability . . . the claimant has not sought out any regular or ongoing psychological or psychiatric treatment for either his depression or learning disorder[.]").

The ALJ gave substantial weight to the state agency consultants' conclusions that Mr. Avila had only "nonsevere" impairments. ALJ Decision, Tr. 88. The ALJ gave less probative weight to Dr. Liu's conclusions because they were "internally inconsistent with his own physical

examinations/treatment notes which show few, if any, positive findings." *Id*. Similarly, the ALJ gave limited weight to Dr. Zitzkat's findings that Mr. Avila had "moderate . . . marked" limitations in sustained concentration and "mild to moderate" difficulty coping with routine workday stresses because those findings were "inconsistent with the basically unremarkable mental status examination at the time." *Id*.

The ALJ then found that even if Mr. Avila's "spine disorders/shoulder disorders/ obesity/asthma were deemed 'severe,'" Mr. Avila would have the residual functional capacity to perform light work with certain limitations, including alternate sitting and standing every 45 minutes and avoidance of concentrated exposure to wetness and humidity. ALJ Decision, Tr. 89.

At Step Four, the ALJ determined that Mr. Avila was incapable of working as a golf course groundskeeper. ALJ Decision, Tr. 90. The ALJ, however, adopted the vocational expert's determinations that Mr. Avila could work as a parking lot attendant, ticket seller, cashier, and inspector (i.e., light exertional jobs). *Id*.

At Step Five, the ALJ concluded that Mr. Avila "has not been under a disability, as defined in the Social Security Act, from December 1, 2014 through the date of this decision (20 CFR 404.1520(C) and 416.920(c))." *Id*.

### B.    Procedural Background

On January 11, 2017, Mr. Avila requested agency review. Social Security Administration, Notice of Appeals Council Action, Tr. 1.

On February 9, 2018, the Appeals Council denied Mr. Avila's request for review. *Id*.

On April 5, 2018, Mr. Avila filed this appeal. Compl.

On June 8, 2018, Defendant filed an Answer and the administrative record. Answer, ECF No. 16.

On August 31, 2018, Mr. Avila moved to reverse the decision of the Acting Commissioner and submitted his Statement of Material Facts. Pl. Mot. to Reverse; Statement of Material Facts; Pl. Mem.

On October 9, 2018, the Commissioner moved to affirm her decision. Def. Mot. to Affirm.

## II.   STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviewing a disability determination "must determine whether the Commissioner's conclusions 'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting *Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)); *see also Moreau v. Berryhill*, No. 17-cv-396 (JCH), 2018 WL 1316197, at *3 (D. Conn. Mar. 14, 2018) ("[T]he court may only set aside the ALJ's determination as to social security disability if the decision 'is based upon legal error or is not supported by substantial evidence.'") (internal citation omitted) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998).

"Substantial evidence is 'more than a mere scintilla.'" *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran*, 569 F.3d at 112 (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) ("Substantial evidence is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It is a "very deferential standard of review—even more so than the 'clearly erroneous' standard." *Brault*, 683 F.3d at 448 (quoting *Dickson v. Zurko*, 527 U.S. 150, 153 (1999)).

## III.  DISCUSSION

The SSA has established a five-step evaluation process for determining whether an

individual is disabled. 20 C.F.R. § 404.1520(a)(4). As the agency explains:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled . . . ;

> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled . . . ;

> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled . . . ;

> (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled . . . ;

> (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled . . . .

20 C.F.R. § 404.1520(a)(4).

### A.  Step Two

Mr. Avila argues that the ALJ committed reversible error at Step Two by conflating the

duration and severity requirements. Pl. Mem. at 1–4.

Defendant argues that the ALJ separately considered the duration and severity of Mr.

Avila's conditions. Def. Mem. in Supp. of her Mot. for an Order Affirming the Comm'r Decision

("Def. Mem.") at 5–10.

The Court agrees.

"Although severity and duration are both addressed at step 2 in the evaluation process, they have been found to be separate questions that require separate analyses." *Melia v. Colvin*, No. 1:14-cv-00226 (MAD), 2015 WL 4041742 at *7 (N.D.N.Y. July 1, 2015); *see* 20 C.F.R. § 416.921 ("After we establish that you have a medically determinable impairment(s), then we determine whether your impairment(s) is severe."); 20 C.F.R. § 416.909 ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the duration requirement.").

The ALJ separately considered the duration and severity of Mr. Avila's impairments. The ALJ described a seventeen-month record of consultations and care for "bilateral shoulder pain . . . low back pain . . ." and other conditions. ALJ Decision, Tr. 87; *see also* Pl. Mot. to Reverse at 9 ("Mr. Avila saw Dr. Junjie Liu at the Yale Primary Care Center for the first time on July 7, 2015."). The ALJ also noted a two-year absence of "regular or ongoing psychological or psychiatric treatment" for Mr. Avila's depression and learning disorder. *Id.*

Separately, the ALJ found that Mr. Avila's conditions were not severe. The ALJ found that Mr. Avila's symptoms were largely episodic and non-severe, as demonstrated by "largely 'negative' unremarkable physical/neurological examinations . . . 'well controlled' diabetes mellitus . . . hypertension, hyperlipidemia, shingles and depression." ALJ Decision, Tr. 87. The ALJ also noted that most of Mr. Avila's conditions had been "treated conservatively with medications and physical therapy." *id*.

Because the ALJ separately considered the duration and severity of Mr. Avila's impairments at Step Two, the ALJ did not err at Step Two in the analysis of the duration and severity of Mr. Avila's impairments. *See Brault*, 683 F.3d at 448 (Substantial evidence review is a "very deferential standard of review—even more so than the 'clearly erroneous' standard.").

### B.    Step Three

#### 1.    Adequacy of Findings

Mr. Avila argues that the ALJ did not adequately support his finding that Mr. Avila's impairments do not meet a listing in Appendix 1 of the Social Security disability regulations ("Listing"). Pl. Mem. at 4–6; 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Defendant argues that Mr. Avila has failed to demonstrate that "he had an impairment(s) that was of listing-level severity[,]" and that the ALJ committed no reversible error. Def. Mem. at 10–13.

The Court agrees.

At Step Three, if a plaintiff demonstrates that one of his or her severe disabilities meets or equals the criteria in a Listing, disability is presumed. *Petrie v. Astrue*, 412 F. App'x 401, 404 (2d Cir. 2011) ("The claimant bears the burden of proof as to the first four steps."); *Whitley v. Colvin*, No. 3:17-cv-00121(SALM), 2018 WL 1026849, at *9 (D. Conn. Feb. 23, 2018) ("The Court finds that the ALJ properly considered plaintiff's impairments, including her obesity, in combination when determining whether plaintiff met a Listing, and there is no error. The Court further notes that plaintiff does not identify any Listing that she believes she met as of her last date insured, and substantial evidence supports the ALJ's finding that she did not meet a Listing prior to December 31, 2010."); *Mestizo v. Comm'r of Soc. Sec.*, No. 11 CIV. 4610 PGG, 2013 WL 3868063, at *6 (S.D.N.Y. July 26, 2013) ("Although the ALJ also addressed Plaintiff's history of asthma, androgen sensitivity syndrome, and psychological condition, the ALJ found that none of these conditions rose to the level of a severe medically determinable impairment. Accordingly, only Plaintiff's digestive and hearing impairments are relevant to the step three analysis.") (internal citations omitted)); *see* 20 C.F.R. § 404.1520(d). "[A] claimant must show

that he [or she] has a medically determinable impairment that satisfies each criterion of the listing." *Lamond v. Astrue*, No. 5:06-CV-0838 (LEK), 2010 WL 3023901, at *5 (N.D.N.Y. Aug. 2, 2010), *aff'd*, 440 F. App'x 17 (2d Cir. 2011); 20 C.F.R. § 404.1525(d).

Mr. Avila's argument fails for two reasons: (1) his position during the hearing was that his impairments did not meet the Listings; and (2) he has not met his burden at Step Three.

At the hearing, Mr. Avila's counsel represented to the ALJ that Mr. Avila should not be presumed physically disabled under the Listings.

> ALJ: Okay. So now in terms of listings, are you asserting any listings, Counsel, in connection with these claims? I have -- I really don't have much in the way of mental. I, I mean they, they've listed 12.02, 12.04, but I just -- I don't see a lot on that. And I don't see any listings for the physical impairments, so I'm just trying to confirm this one way or another.
>
> ATTY: Yeah, there, there are no listings for the physical impairments.

Hearing Transcript, Tr. 32. Further, counsel provided no guidance on the match of Mr. Avila's mental disabilities to the Listings.

More recently, Mr. Avila has asserted that his conditions, individually or in combination, meet a listing. Pl. Mem. at 31. Mr. Avila, however, has not identified a relevant Listing or provided the medical evidence that meets all of the specified medical criteria of that Listing during the relevant time period from December 1, 2014 through January 11, 2017.

As a result, Mr. Avila has not met his burden to demonstrate a severe impairment that meets the criteria of a Listing. *Petrie*, 412 F. App'x at 404 ("The claimant bears the burden of proof as to the first four steps."); *Whitley*, 2018 WL 1026849, at *9 ("The Court further notes that plaintiff does not identify any Listing that she believes she met as of her last date insured, and substantial evidence supports the ALJ's finding that she did

not meet a Listing prior to December 31, 2010.").

### 2.     The Treating Physician Rule

The treating physician rule gives "deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). Under this rule, "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess*, 537 F.3d at 128 (quoting 20 C.F.R. § 404.1527(d)(2)); *see also Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).[4]

The treating physician's opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa*, 168 F.3d at 78 (2d Cir. 1999) (citations omitted)). The treating physician's opinion, however, is not afforded controlling weight where "the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts." *Halloran*, 362 F.3d at 32.

When an ALJ does not give controlling weight to the treating physician's opinion, he or she must determine how much weight to give to the opinion. *See* 20 C.F.R. § 404.1527(d)(2). When determining the weight the ALJ should consider: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether

---

[4] On March 27, 2017, new regulations took effect that effectively abolish the treating physician rule; for claims filed before March 27, 2017, however, the treating physician rule continues to apply. *See* 20 C.F.R. § 416.927; *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 n.1 (2d Cir. 2018). That is the case here. Mr. Avila's claim was heard by an ALJ several months before the treating physician rule changed. Hearing Transcript, Tr. 16.

the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion." *Halloran*, 362 F.3d at 32 (citing 20 C.F.R. § 404.1527(d)(2)). An ALJ need not enumerate these factors in his or her decision. *Id.* ("Applying these regulations and principles, we deduce that the ALJ considered the treating physician's opinion and explained the consistency of Dr. Elliott's opinion "with the record as a whole.") (citing 20 C.F.R. § 404.1527(d)(4)). The Commissioner, however, "must provide good reasons for the weight she gives to the treating source's opinion."). *Id.* at 33 (citing *Schaal*, 134 F.3d at 505).

Mr. Avila argues that the ALJ ignored the treating physician rule and relied on his own opinions when determining Mr. Avila's residual functional capacity ("RFC"). Pl. Mem. at 7–10; *see* Tr. 88–89.

Defendant argues that the ALJ's RFC finding is based upon and consistent with the medical record as a whole. Def. Mem. at 14–16.

The Court agrees.

An ALJ must assess whether a claimant's impairments render him unable to perform basic work-related activities for twelve consecutive months. 20 C.F.R. §404.1521 *et seq.* and 416.921 *et seq.* When a claimant's severe impairment does not meet a Listing, the ALJ must determine if the claimant has the residual functional capacity to do sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 404.1567.[5]

"Mr. Avila saw Dr. Junjie Liu at the Yale Primary Care Center for the first time on July

---

[5] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities." 20 C.F.R. § 404.1567(b).

7, 2015." Pl. Mot. to Reverse at 9. Dr. Liu, who appears to be a generalist, saw Mr. Garcia several more times in the seventeen months preceding his hearing. *see* Tr. 286, 626, 644.

At Mr. Avila's first visit, Dr. Liu noted that Mr. Avila stopped going to the allergy clinic in 2014. *See* Junjie Liu, M.D., Progress Note (July 7, 2015), Tr. 286. During that summer 2015 visit, Mr. Avila reported "no recent" asthma flare-ups, and that he was pursuing at-home treatments. *Id*. The month of the ALJ hearing, Dr. Liu characterized Mr. Avila's asthma as "severe persistent (worst) category" and caused by "numerous environmental triggers," and noted that Mr. Avila had "progressed through max. inhalers." *Id*. at 723.

One month before Mr. Garcia's hearing, Dr. Liu referred him to Dr. Jose Luis Gomez Villalobos, a pulmonologist. Jose Luis Gomez Villalobos, M.D., Progress Notes (Oct. 25, 2016), Tr. 732–33. Doctor Gomez Villalobos described Mr. Avila's asthma as "poorly controlled" and "severe;" he noted that Mr. Avila might be a candidate for "biologic therapy." Jose Luis Gomez Villalobos, M.D., Progress Notes (Oct. 25, 2016), Tr. 732–33.

The ALJ gave "less than probative weight" to Dr. Liu's asthma findings for two reasons: (1) they were "inconsistent with his own physical examinations/treatment notes which show few, if any, positive findings"; ALJ Decision, Tr. 88; and (2) state agency consultants found the asthma non-severe. *Id*. ("See: Exhibits 1A, 2A, 5A and 6A").

As described above, Dr. Liu ultimately described Mr. Avila's asthma as poorly controlled. Tr. 723. He also noted, however, that Mr. Avila went long stretches without exacerbations. Tr. 286. The state agency consultants noted significant periods of time between flare-ups, Tr. 96, and at-home treatment during most of the period at issue. Tr. 93. Doctor Gomez Villalobos described Mr. Garcia's condition as "poorly controlled" and "severe," but his assessment occurred one month prior to the hearing. As a result, his assessment could not

16

reasonably substantiate a finding of "poorly controlled" asthma from late 2014 through late 2016.

Given the long periods between flare-ups documented by Dr. Liu and the state agency consultants, the conservative course of Mr. Avila's treatment, and the late date of Dr. Gomez Villalobos's assessment, the ALJ could reasonably view Dr. Liu's asthma opinions as "inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (internal citations omitted).

As a result, the ALJ did not err in assigning Dr. Liu's asthma opinions "less probative weight." ALJ Decision, Tr. 88; Def. Mem. at 15–16 ("[T]he ALJ found that Dr. Liu's November 2016 opinion was internally inconsistent with his own examination findings/treatment notes . . . . Rather, the ALJ included . . . environmental limitations into the alternate RFC finding."); *Rosa*, 168 F.3d at 78 (the treating physician's opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence."); *Brault*, 683 F.3d at 448 (Explaining that substantial evidence review is a "very deferential standard of review—even more so than the 'clearly erroneous' standard.").

The same is true for Dr. Liu's shoulder injury opinions.

Dr. Liu's treatment notes show that Mr. Avila's shoulder pain began in 2014, Junjie Liu, M.D., Progress Note (July 7, 2015), and was partly responsive to minimal treatment (e.g., lidocaine patches) in 2015, *id*. The pain did not reached self-reported 10/10 pain levels until 2016. Junjie Liu , Adult Clinic Visit Note (Nov. 28, 2016). Tr. 726.

A January 2016 MRI of Mr. Avila's left shoulder revealed "full-thickness tear of the supraspinatus tendon" and "partial tear involving the intra-articular portion" of the "long head of biceps tendinosis." Jose Restrepo, M.D., Exam: MR Shoulder without Contrast Left (Jan. 11,

2016), Tr. 737–38. In late 2016, Dr. David Kovacevic, an orthopedic surgeon, characterized the tear as a "small full-thickness SSp tear with no retraction and preserved muscle quality." David Kovacevic, M.D., Chief Complaint Follow-up, Tr. 735–36. Dr. Liu disagreed, and "strongly advised [Mr. Avila] against lifting anything unnecessary." Junjie Liu, M.D., Residual Functional Capacity: Medical Source Opinion of Treating Physician, Tr. 723; Adult Clinic Visit Note (Nov. 28, 2016), Tr. 729.

The state agency consultants based their findings on a July 2015 exam, October 2015 exam, and October 2015 physical therapy session, Tr. 94–95, 103. The July 2015 exam "replicated pain upon an flexion and abduction against resistance, and upon reaching to back (external rotation). [It found that Mr. Avila had m]uch less pain upon passive movement." Tr. 104. The examiner rated Mr. Garcia's muscle strength as 5 of 5 bilaterally and determined that his "[s]ensation [was] grossly intact." *Id*. at 95.

A reasonable reading of the record could support a finding that Mr. Avila's pain increased over time and responded to conservative treatments throughout 2015. A summer 2015 evaluation showed no loss of strength and an ability to perform passive movements. Tr. 104. After the 2016 MRI, Drs. Kovacevic and Liu seemed to reach different conclusions about the extent of Mr. Avila's shoulder tearing and remaining muscle capacity. *Cf.* David Kovacevic, M.D., Chief Complaint Follow-up, Tr. 735–36; Junjie Liu, M.D., Residual Functional Capacity: Medical Source Opinion of Treating Physician, Tr. 723; Adult Clinic Visit Note (Nov. 28, 2016), Tr. 729. Accordingly, Dr. Liu's shoulder injury opinions could reasonably be construed as "inconsistent with the other substantial evidence in [the] case record." *Burgess*, 537 F.3d at 128 (internal citations omitted).

As a result, the ALJ did not err in assigning Dr. Liu's shoulder injury opinions "less

probative weight." ALJ Decision, Tr. 88; Def. Mem. at 15–16 ("[T]he record reveals that throughout the relevant period, Plaintiff had full muscle strength, no strength deficits, no muscle atrophy, and normal tone and bulk."); *Rosa*, 168 F.3d at 78 (the treating physician's opinion "is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence.").

The ALJ's conclusion that Mr. Avila could perform light work during the period of time at issue was supported by substantial evidence. *Brault*, 683 F.3d at 448 (Explaining that substantial evidence review is a "very deferential standard of review—even more so than the 'clearly erroneous' standard."). Accordingly, the Commissioner has met her burden to show good reasons for the ALJ's decision to assign "less probative weight" to the treating physician's opinion. *Halloran*, 362 F.3d at 33 (noting that the Commissioner "must provide good reasons for the weight she gives to the treating source's opinion.").

## C. Step Five

After a claimant has proved that his or her residual functional capacity precludes a return to past relevant work, Step Five shifts the burden to the Commissioner "to show there is other work that [the claimant] can perform." *Brault v*, 6813 F.3d at 445. To meet the burden, "[t]he Commissioner need show only one job existing in the national economy that [the Claimant] can perform." *Bavaro v. Astrue*, 413 F. App'x. 382, 384 (2d Cir. 2011) (summary order) (citing 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(b)).

An ALJ may determine that a suitable job exists in the national economy "either by applying the Medical Vocational Guidelines or by adducing testimony of a vocational expert." *McIntyre*, 758 F.3d at 151. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and

accurately reflect the limitations and capabilities of the claimant involved." *Calabrese v. Astrue*, 358 F. App'x. 274, 276 (2d Cir. 2009) (internal citations omitted). The Second Circuit has repeatedly held that "a vocational expert is not required to identify with specificity the figures or sources supporting his [or her] conclusion, at least where [s]he identified the sources generally." *McIntyre*, 758 F.3d at 152.

Mr. Avila argues that the ALJ's Step Five finding, Tr. 98, is insufficient for four reasons: (1) the record does not support the vocational expert's finding that Mr. Avila could perform jobs that require "constant reaching, constant handling, and constant fingering," Pl. Mem. at 17–18; (2) the vocational expert cited no source for her job incidence testimony, *id.* at 19; (3) the ALJ's hypothetical incorrectly stated Mr. Avila's residual functional capacities (e.g., vis-à-vis reaching), *id.* at 19–21; and (4) the ALJ did not consider the impact of Mr. Avila's combined conditions, *id.* at 22–24.

Defendant argues that "the ALJ's hypothetical . . . reflect[ed] the well-supported RFC conclusion, the VE identified work . . . that someone with Plaintiff's vocational profile and RFC could perform . . . . [and] 'a vocational expert is not required to identify with specificity the figures or sources supporting his [or her] conclusion, at least where [s]he identified the sources generally.'" Def. Mem. at 16–19.

The Court agrees.

The ALJ asked the vocational expert to consider a hypothetical person who could not reach bilaterally frequently and would need to avoid exposure to extreme wetness, humidity, fumes, odors, dust, gases, poorly ventilated areas, dangerous fixed machinery, and assembly-line work (i.e., paced work). Hearing Transcript, Tr. 60–61. The ALJ then asked the vocational expert to consider only light jobs for such a person. Hearing Transcript, Tr. 62. The ALJ added

that the person would need to alternate between sitting and standing every 45 minutes, but could frequently reach overhead with his right arm and occasionally with his left arm. Hearing Transcript, Tr. 62–63.

The vocational expert determined that even with those limitations, the person could work as a ticket cashier, seller, or taker. Tr. 64; *see* Pl. Mem. at 16 (i.e., "211.467-030 TICKET SELLER (clerical) alternate titles: cashier, ticket selling."). The vocational expert also testified that the person could work as a parking lot attendant with accommodations for alternating sitting and standing. Tr. 64–65; *see also* Pl. Mem. at 16, n.24. The vocational expert testified that 75,000 parking lot attendant jobs exist in the national economy, Tr. 64. She grounded her testimony in references such as the *Dictionary of Occupational Titles* and *Selected Characteristics of Occupations*. Tr. at 58. *McIntyre*, 758 F.3d 146, 152 (2d Cir. 2014).

As explained above, the ALJ based his RFC finding on substantial evidence. The ALJ included the RFC finding into his hypotheticals to the vocational expert, including limitations on reaching, sitting, standing, exposure to environmental irritants, and attention deficits. Hearing Transcript, Tr. 60–63.

Mr. Avila argues that the vocational expert exceeded the scope of the ALJ's instruction that she list only jobs requiring "[f]requent, as opposed to constant" reaching. Tr. 63. Pl. Mem. at 17. But the *Dictionary of Occupational Titles* listing for ticket seller, Pl. Mem. at 16, n.24, does not include "constant" reaching. Additionally, even if the ticket seller position is excluded, the vocational expert testified that a person with Mr. Avila's RFC could work as a parking lot attendant, and that 75,000 relevant jobs exist in the national economy, Tr. 64; Def. Mem. at 18.

Mr. Avila asserts that the ALJ must cite the source of her job incidence testimony. But the Second Circuit has repeatedly held that "a vocational expert is not required to identify with

specificity the figures or sources supporting his [or her] conclusion . . . where [s]he identified the sources generally." *McIntyre*, 758 F.3d at 152.

As a result, the ALJ properly instructed the vocational expert, who then provided reliable testimony that Mr. Avila could perform several suitable jobs existing in sufficient numbers in the national economy. *See Calabrese*, 358 F. App'x. at 276. ("An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as the facts of the hypothetical are based on substantial evidence, and accurately reflect the limitations and capabilities of the claimant involved.").

The ALJ also properly considered Mr. Avila's combined impairments, including obesity.

"As of October 25, 1999, obesity is no longer a stand-alone impairment listed in Appendix 1." *Crossman v. Astrue*, 783 F. Supp. 2d 300, 309 (D. Conn. 2010). "At step[] . . . five, the ALJ must evaluate obesity in conjunction with claimant's residual functional capacity by assessing the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." *Id.* at 309–10 (quoting Revised Medical Criteria for Determination of Disability, Endocrine System and Related Criteria, 64 Fed. Reg. 46122 (Aug. 24, 1999)).

Mr. Avila argues that the ALJ did not appropriately account for his obesity, his heart palpitations, or the combination of his myriad impairments. Pl. Mem. at 22–26.

The Court disagrees.

The ALJ noted Mr. Avila's "episodic palpitations" and found that they were of "unclear etiology and therefore . . . not considered a medically determinable impairment." *Id.* at 85. The ALJ also considered Mr. Avila's combined "spine disorders/shoulder disorders/obesity/ asthma[.]" ALJ Decision, Tr. 89. The ALJ specifically acknowledged that Mr. Avila might only

be able to walk for one block. *Id*. at 86–87. The ALJ discussed Mr. Avila's depression at length. *Id*. at 86–88; see Pl. Mem. at 24 ("Although Social Security Ruling 12-2p notes 'Obesity may also cause or contribute to mental impairments such as depression,' the ALJ appears not to have noticed.").[6]

The medical record supports the ALJ's finding that Mr. Avila's palpitations were not severe. *See*, *e.g*., Junjie Liu, M.D., Progress Note (July 7, 2015), Tr. 286 ("#Palpitations: Per pt, started ~5 years ago immediately after a cardiac angiography procedure during a chest pain hospital visit. The heart was found fine . . . . Is followed by cardiologist Dr. Hahn . . . . Dr. Hahn said he'd call pt if results are abnormal, and pt got no call."). Dr. Liu did not consider the palpitations—or Mr. Avila's obesity—to be his primary impairments. Junjie Liu, M.D., Residual Functional Capacity: Medical Source Opinion of Treating Physician, Tr. 724 (listing three conditions as the primary contributors to Mr. Avila's limited RFC: asthma, shoulder injuries, and spinal stenosis.).

The ALJ considered these and other factors, in combination. ALJ Decision, Tr. 89 (considering Mr. Avila's combined "spine disorders/shoulder disorders/obesity/ asthma[.]"). The ALJ also analyzed the effect of the combined impairments on Mr. Avila's ability to perform a job. *Id*. at 86–88 (discussing, for example, Mr. Avila's remaining capacity to walk distances and his depression). As a result, the ALJ evaluated the effect of Mr. Avila's obesity, combined conditions, and RFC on his "ability to perform routine movement and necessary physical activity within the work environment." *Crossman*, 783 F. Supp. at 309–10.

---

[6] In fall of 2015, Dr. Franklin-Zitzkat opined that Mr. Avila's "depression is related to his alleged physical problems/inability to work . . . if he could physically work and maintain employment, the depression would remit and he would be able to withstand the stresses and pressures of a routine work day and maintain attendance." Liese Franklin-Zitzkat, Psy.D., Disability Evaluation, Tr. 426.

Accordingly, the ALJ did not err at Step Five and the Commissioner has met her burden to show that "one job exist[s] in the national economy that [the Claimant] can perform." *Bavaro*, 413 F. App'x. at 384.

## IV.    CONCLUSION

For the reasons above, the Court **DENIES** Mr. Avila's motion to reverse the decision of the Commissioner, Pl. Mot. to Reverse; and **GRANTS** the Acting Commissioner's motion to affirm, Def. Mot. to Affirm.

The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 5th day of August, 2019.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE